Our first case is ST Case1Tech, Tequilla v. Squires, 23-2380A. Mr. DeMarco, you had reserved four minutes of time for rebuttal, correct? Yes, Your Honor. All right, you may start. May it please the Court, my name is Andrew DeMarco, an associate at Devlin Law Firm on behalf of Appellant. The terms adjusting and adjust in the 244 patent at issue today have already been construed by Judge Gilstrap of the Eastern District of Texas in the manner sought by Appellant. We are here today because the Board departed from those constructions in favor of construction supported by neither the specification nor pertinent law, and in some cases with little to no explanation. Appellant, however, has provided unrebutted expert testimony and support in the specification for the construction adopted in the Eastern District of Texas. Can I just say this? I didn't remember there being anything that we would consider the kind of extrinsic evidence in the form of expert testimony that would raise an issue of fact. When an expert says nothing more than, let me walk you through the specification, we've said repeatedly that's not, that does not create a matter of fact. So, I don't remember that the expert did anything like that, right? No extra patent usage. These terms out in the world of adjustment under, et cetera. So this is all an intrinsic evidence case. Yes, Your Honor. When it comes to the testimony of Mr. Kleinschmidt, he's referring to what a proceeder would understand regarding the term adjustment in the context of the patent itself. And he cites to the specification and looks at it. So can I ask you this question and I know that this is kind of starting at the back end. On appendix page 19, right at the bottom of the page, you'll know the sentence I mean. The board says, even if your client's claim construction was right, Rosenberg sufficiently teaches that. Why would we not say, that's supported by substantial evidence. We need not decide the claim construction question. So, Your Honor, there's several different reasons for why Your Honor should not find in that particular regard. So, the board, for starters, provides no explanation of any motivation to alter Rosenberg's continuous loop. So, what we have here, this statement from the board about Rosenberg. I'm sorry, why would one need a motivation? The board says in that, admittedly, one sentence, but then followed by several paragraphs that, I think, address an argument you made in your patent owner response about paragraphs 50 and 51 of Rosenberg. In the sentence at issue here, the board cites paragraph 44, in which Rosenberg says, looking at our little figure, I forgot, figure 2 or whatever, was it figure 2? Yes, Your Honor. Figure 2, that the steps can be performed in a variety of orders. Doesn't get more specific than that, but the board says, in what reads like a fact finding on the matter of the interpretation of a piece of prior art, which is a matter of fact, that we think that this teaches an order in which a timer is set before the adjustment occurs. Well, Your Honor, it doesn't, the issue with the board statement here is that it doesn't actually state why a person of ordinary skill in the art would be motivated to make those changes, assuming that this is the sort of obviousness argument that is just normalizable. I'm sorry, I'm just going to repeat myself. If a prior art is read to teach that change, who cares whether an ordinary skilled artisan would be motivated to make the change? I mean, who cares in a very informal sense? In an informal sense, Your Honor, yes. Well, it's just that this finding of could be arranged has been found under Therosense to be an insufficient legal basis for anticipation, if that's what Your Honor is stating, this idea that the board has found that it's sort of inherently disclosed here in this single sentence. The fact that, I think it was Mr. Polish, Samsung's expert, states that you could have arranged Rosenberg through this continuous loop in which the steps could be taken at any different point, that you might be able to find a scenario where you could configure something that reaches the steps of the 244 patent. That's all it simply states. But under Therosense, v. Becton, that's 593 F3rd 1325, could have been arranged as insufficient for 102, which is why, Your Honor, I was jumping to 103, the assumption that if we could construe the board's statement as being sort of an obviousness finding, then perhaps there might be something there. But even then, the board's opinion, as you note, doesn't really go on to describe why a person of ordinary skill in the art would make the necessary alterations to reach the 244 patent. So what's your argument? That Rosenberg does not render the patent obvious? Is that your argument? Or are you arguing that the board never fully examined or explained itself with respect to Rosenberg? Well, certainly the latter there, Your Honor. I don't think that the board has gone into that great detail. There's some additional and new arguments. But you concede that if we do apply, if Rosenberg applies, then the patent is obvious, is rendered obvious? No, Your Honor, I don't necessarily concede that point. We haven't seen any evidence to that effect in the record here before us, which is why we state in our briefs that sort of the new citations that have been supported or brought to the fore by intervener, which don't appear in the board's decision, that sort of evidence would need to be addressed on remand. And that's why we argue that there in our papers. There's simply not enough evidence there, at least not on this record, to render that decision. So on the claim construction question, what are your best points for your position that the timer has to start before adjustment occurs? Well, Your Honor, I think the best point we have in our papers is the plain language itself. Well, plain is an overused word, right? I where there's a modifier at the end and there are two possible earlier reference for the modifier, either the adjusting or the delivered. Might not be the perfect example of that, but plain, I think, is an overstatement. Why do you think either textually or from the spec or by the basic mechanics of how this operates, that you really have to have that timer started before the adjusting of this is of the music gain, right? Yes, Your Honor. So, well, let's just start with the very stated purpose of the invention itself, which is to make it easier for an individual who's wearing earphones to be aware of the ambient sound around them while listening to a podcast or music or something to that effect. So the very purpose is so that we can, upon the identification of hearing this ambient noise or a voice in this particular case, that ambient sound is increased while the media is decreased for that general purpose. If we were to apply the board's construction to say that during applies to when the sound is delivered rather than the adjusting point itself, we wind up with a curious scenario where you are adjusting a mixing gain of an audio content signal that is delivered to the earphone with the ambient sound passed through during a voice timer, pending voice activity. So what's occurring during the voice timer is, according to the board's construction, the delivery of the audio to the earphone. But this creates a confusing issue because you're adjusting the mixing gain of an audio content signal that is delivered during that voice timer. So we wind up with a scenario where the adjustment to the audio content signal is occurring still during the voice timer, not before the voice timer. So the board's construction is sort of erroneous in that regard. But also, if we take a look at it, you're adjusting the mixing gain of an audio content signal that is, per the board, delivered to the earphone with the ambient sound passed through. So what you're adjusting is the mixing gain of a single thing. What is being mixed? It's, according to this interpretation, it's only the audio content signal. Is there a claim construction or otherwise clarity of what it means to adjust a mixing gain? I mean, I can imagine that it could mean either of possibly two different things, namely adjusting the gain of each of the two things in the mix. I don't think it means that here because you can adjust. I'm just going to keep calling it music because it's simpler to see. You're adjusting the gain, which is the amplification of the music before it gets to the speaker, to be mixed with the other thing, which is the spoken voice from outside the user's head. And some of the other claims talk about adjusting the gain for that, two separate things. So that could mean that you're adjusting the gain of the music to be mixed with the other source of sound. Why is this odd? I think that if I remember the government's brief, it contemplates the possibility that the adjusting is done outside the earphone before the music is then delivered to the earphone. And I wasn't quite sure what to make of that suggestion, but that at least would allow this to be read as adjusting the music gain to be delivered to the earphones. Well, Your Honor, I would suggest that under the board's reading, the adjustment itself is occurring during the voice timer itself. Because there, you're adjusting a mixing gain of an audio content signal delivered to the earphone with the ambient sound pass through during the voice timer. So even there, it wouldn't be happening before transmission or for preparation for future mixing, which respectfully I don't necessarily see supported in that language. But if we were to say that the adjusting is occurring for future mixing, I don't think that's what's recited here. Instead, actually, if we turn to Apex 54 at column 8, lines 39 through 41, we do have a discussion in the specification about what the step of adjusting the mixing gain is. And this was to Your Honor's earlier point. And I'll just read it here because I think it's important. The step of adjusting the mixing... I'm sorry, line, column 8, line what? I apologize, Your Honor. It is column 8, lines 39 through 41. Okay. And it says, the step of adjusting the mixing gain of an audio content signal includes decreasing the volume of the audio content signal delivered to the internal speaker when the voice activity is detected above a threshold and or increases the volume of the audio content signal delivered to the internal speaker when the voice activity is detected below a threshold. So here we have the adjustments of the mixing gain of the two separate things. Your Honor, that connector was and or. So the or situation means that it covers decreasing the volume of the music and just letting the voice pass through without any adjustment of increase of the amplification of the voice. Yes, Your Honor, that would be supported in the spec, but that's, I would argue, not what's here in Exemplary Claim 1. Counsel, one question. Why would a person of ordinary skill in the art not understand maintaining to be a subset of adjusting here, particularly when it seems your expert agreed to that very point, 1334 to 1335? Well, Your Honor, I'll answer this question. I would like to reserve a little time for rebuttal. You can take your time to answer. Yes, Your Honor. Thank you. Well, Your Honor, I would like to address that very point because I don't think that's actually what Mr. Kleinschmidt is stating here. If we do look at 1335 to 1336, what Mr. Kleinschmidt is stating when he says that the adjusting step is satisfied when the gain is changed and that gain is maintained during a period in which the voice timer is active, that's not equating maintaining with adjusting. Rather, what he's saying— I'm not equating. Why isn't maintaining an example of adjustment to a person of ordinary skill in the art? Because what it is is maintaining a prior adjustment, Your Honor, and I think that's the key point there. In order for something to be maintained, it must first exist. The adjustment must have happened at a prior point, and that's why I think it's not merely a subset. It is the continuation of an adjustment. Is it within the scope of your claims as properly construed or not, maintaining a prior adjustment once the voice timer is activated? Maintaining is within the scope, yes, Your Honor. That's fine. Thank you. Okay. Thank you. We'll restore your rebuttal time at the right time. Counselor Amin? Thank you, Judge Verna. May it please the Court. If I could start with the alternative basis for affirming the Board's decision first. The Board left no doubt, I think, on Appendix 19. Even if the claim had been construed the way appellant urged it to be construed—that is, the order of steps that they urged—the Board would have reached the same result, and that was based on disclosure in paragraph 44 that clearly states that— Of Rosenberg? Of Rosenberg, yes. It clearly states that although the steps of Figure 2 of Rosenberg are shown in a particular order, they could have been reordered in a number of different ways, including—I think it's clear from the Board's finding, what the Board is saying is that you could have flipped those two steps, the start of the time delay and the adjustment of the volume. And so— You think it's clear, but in your brief you go on for many pages, you cite certain evidence. All we have is one sentence from the Board. Can we really, in a review of an administrative agency, credit all the thoughts that you've put into it that just simply aren't there in what the Board wrote? Sure. And so I think the expert testimony that we cited might be relevant if the Court wanted to engage in a harmless error review, but I think that we don't really even need to get there because I think that the amount that the Board really needs to say on this score depends on the delta between what's recited in the claims and what's in the prior. And here the delta is very small. The delta is just the order of steps. And so I don't know that much more was needed here. I disagree with my friend on the other side that motivation was actually needed, one, because the reference actually discloses changing the order of the steps. Well, it says there can be change of steps. It doesn't say change these two steps. Of course. But, I mean, there's only like five steps recited there. And so I think that a natural way of reading it is also to encompass those two steps. But even if that disclosure is not necessarily sufficiently specific, I think that when you have a situation where there's only, you have an unknown problem, that is, you're trying to figure out how to span gaps in a conversation without changing the volume too quickly, there's only two possible solutions here. You either start the timer before or you start the timer after. In that situation, I don't know that you need a separate motivation. I think KSR teaches us that one of ordinary skill in the art has good reason to try both of those alternatives. And both of those alternatives would be obvious than one of ordinary skill. I'm just more concerned, I think, about the standard of review from an administrative agency. The KSR point, I'm just not sure we can affirm on that when, I'm not sure that was even argued to the board, but certainly the board doesn't say it. So that's just one example of things that you're reading into the board may be perfectly plausible that may be what the board thought, but since they didn't tell us that, is it really fair for us to affirm on that ground? Well, I think, so of course I agree that the board's discussion here is brief, but I don't think there's a Chenery type situation here because the board left no doubt as to how they would have ruled. So the ground that the board ruled on here was obviousness. And the board left no doubt here that the board would have found the claim obvious even if the claim instruction had been as a felony charges. So putting aside harmless error, I think that's what was mentioned. And there, at least I can think of two kinds of administrative law issues that can be faced with a extremely abbreviated finding, but finding about what Rosenberg teaches, very specifically that. One is, is there important evidence that the board didn't discuss that needs to be discussed? Second is, is there some significant argument that the patent owner made that wasn't addressed? Are either of those two things missing from the board's discussion? I'm not aware of any. So there is certainly, as Judge Stark alluded to, there's additional evidence that might have supported obviousness. We cited that in our brief. What was the additional evidence? The Polish testimony. Exactly. So that would have further supported an obviousness conclusion because it further shows that the order of steps is not important. But I'm not aware of any argument or evidence that would have gone the other way that the board didn't address on this point. So maybe you can explain this. I took it that from the patent owner response around page 29, 30, so on. There was an argument about how Rosenberg doesn't really support this flipped order finding or conclusion. This is in the patent owner response below, not the patent owner response there, right? And it had to do with what paragraph 50 and paragraph 51 of Rosenberg teaches. And the board, right after this page 19 sentence, immediately has two long paragraphs discussing paragraph 50 and paragraph 51. Is there any chance you can quickly clarify what that's all about? I think I'd have to go back and look at it. I don't recall patent owner re-urging that on appeal. So I'm not, I'd have to, I can take a quick look at it if that's okay. No, no. Move on to something else. Okay. My apologies, Your Honor. So I think that even if the construction had been as appellant urges, the board would have found the same. And I think that that's fully supported in the Rosenberg reference. And it's supported in the board's own findings, which when discussing the claim dimension, the board's reason that the order of activating the timer and adjusting the gain was not important to the claim dimension. That's a point that, as far as I'm aware, has not been disputed on appeal. So are there, what are your arguments on the claim construction point? Textual or specification, I guess, are the only two sources that have been meaningfully put before us. Yeah, absolutely. So in our view, the most natural reading of the adjusting limitation is to have the during clause modified to delivered. And I think that, so I think the board was confronted with this limitation that kind of pulls from two processes that are both described in the 244 patent. So one, you have this process described in figure 1B, where you have this continuous operation. You have the two streams of data. And as my friend argues, and I completely agree, there's no memory disclosed here. So everything that comes into the top has to come out the bottom. And all those different steps are constantly working. And then on the other hand, you have what's shown in figures 2B and 2D, which is a series of steps, a series of discrete sequential steps that are used to determine the gains at 183 and 184. So when confronted with a limitation that pulls from both of these kind of different processes that are described in the 244 patent, and with the background idea that the whole point of the voice timer is not to have the gain be adjusted up and down during these conversations, like abruptly. And the board reasonably reasoned that adjusting in this context, in this limitation, means, is an umbrella term that covers both the initial adjustment followed by a period during which that adjustment is maintained at a relative, at a level that's adjusted relative to when you were listening to music. Does your argument depend on our agreeing with you that the word adjustment here, the word adjusting, to use the active form, includes maintaining? Or can you win on the claim construction point if I were to disagree with you about that? I think we could still win based on our kind of textual reason and claim that is that the during clause modifies the delivered. And I think that even apart from this idea of like, apart from the patent, this is whether adjusting includes maintaining, our point is narrower than that. It's that in this, in the context of this limitation, when the patent uses this kind of phraseology, adjusting followed by delivering, mixing these two kind of processes that are happening in the 244 patent, in that circumstance, adjusting includes maintaining. I'm not sure if I answered your honest question, but I think that even if in the abstract, adjusting does not, is understood as not necessarily including maintaining, I think that our argument is narrower than that. And even if that argument is not accepted, I think that based on the plain text of the claim, I think the most natural reading is to have the during modified the delivered. So how, in light of the specification, would, or what in the specification indicates that you can have the adjusting first and the timer start later? So our point in the specification, so I guess two points there, Your Honor. First, there's no dispute, I think, in figure 2b, you do have the adjustment first. Sorry, you have, yeah, the adjustment happened first and the timer start later. You have 253 and 254 happen before the timer started in 255. Well, so if I remember right, you may have said something unduly strong, adverse to your position. The column, I think it's column five, is it? Yes, that says a timer starts before 255 precedes. That doesn't say how much before 255. It might be all the way up before 252, which would make some sense because if the answer to the 252 question is the user, the one wearing the headphones speaking, is no. The next question is, was there a recent user? You can't have a question about what's recent without a timer. So I'm not in this process except north of 255 the timer starts. So I think two responses to that. One, I think that passage in column five refers to when user voice activity ceases, which to me suggests that in 252 the answer was yes. And so, and I think that the whole point of the timer is to to ensure, I guess not to use the word maintain, to ensure that the changed volumes last as long as the conversation goes. So I think that the more natural reading of it is to have the volumes change and then use the timer to determine on the next go around whether there was still recent user activity or not. I think that's what's described in column six at about the paragraph that starts about line 14. So I think that while I agree with Your Honor's point that it doesn't say exactly when prior to 255 the timer starts, I think the most natural reading of it is that the timer starts after 253. What happens when there is no sound? There's no sound at all. So if, oh sure, so in figure 2B, if there is no sound, if there's no like outside sound. And nothing's happening. Then the music continues to play at the regular volume. And then what starts the entire process? Sound. Sound comes in. The user's in. And then the voice timer is, turns on. So first in figure 2B, first you change the two gains. Yeah. I think a person of ordinary skill would look at this and say, well, if there's no sound, nothing's happening. Suddenly there's sound. And then the, it activates a voice timer. Correct? Sure. Absolutely. Okay. Before that happens, is there any reason to adjust, to make any type of an adjustment to the ambient sound? Before the user, before there's a voice? Yes. No. There's no reason to change the gains before there's a sound from the user. The sound from the user is like the, is the trigger for changing the volume. That's what tells the system, I need to lower the volume of the music so that I can hear him, this person talking to somebody else. And when that happens, is it, it's that the system has encountered sound and it's saying, now we need some sort of adjustment. Like the gain. Elimination of the static or leveling out the different sound levels. Exactly. Yeah. And in that, in this situation, you have the gain being changed before the timer starts. Why is that not an example of, why is that not an example of that the steps are required to be in order? So in this context, this part of figure 2B that we're starting, what we're discussing, the order would be actually contrary to what appellant's urging. So in this situation, it would be, it would encompass a gain change, a change in volume that happens before the timer starts, which is exactly how Rosenberg, what Rosenberg shows in figure 2B, figure 2. So for you, I think I probably misspoke before. 2B is like failure to specify that the timer starts above 252 and allowing the timer to start anywhere above 255 is an example of your construction. I think it supports our construction. So I guess taking a step back, the legal standard that we're confronted here with is kind of either as a matter of logic or grammar on the one hand, or as does the specification compel a reading of the claims such that there's order. And so I use figure 2B in that second bucket. Is the specification compelling an order? And here, since it doesn't, like your Honor said, since it doesn't say that it's got to start before 255, it's not compelling a particular order of the claims. What should we do with respect to Judge Payne's opinion on this, his construction? Should we give it any type of consideration in our view? Since it's a pure question of law, I think that, sure, of course it should be given due consideration, but I don't think it's controlling on the score. It wasn't controlling on the board. No, I don't think it's controlling on the score. Okay. Any questions? All right. Thank you, Counselor. Okay, so we have restored four minutes in rebuttal time. Yes, Your Honor. Thank you. You got everything set up? Yes, Your Honor. You got three minutes left now. Oh, I didn't think the timer had been up. No, okay. Well, Your Honor, so I wanted to start very quickly by following up on my departing remark to Judge Stark. I just wanted to clarify that maintenance within the scope of the claims as long as the adjustment is occurring during the timer. I wanted to clarify that point before I moved on. I also wanted to touch on a couple of things that my friend mentioned while he was up here. Specifically, my friend admitted that the Rosenberg analysis is occurring under 103. So this means that Rosenberg doesn't disclose any particular order directly, even with the continuous loop. And there's no statement from the board, as I mentioned, in that single sentence, which supports a finding under 103. So this is a Chenery issue. The 103 argument is built up by appellate counsel, and remand is required to address those arguments insofar as they were, in fact, made in the petition. I also want to note that my friend had mentioned that one maintains the adjustment in question, which, of course, goes to appellant's argument here. And also, this occurs on page 19 of the brief. This is just normal language. And that's why the plain language of this claim supports appellant's position. So I wanted, then, to turn to another particular issue, which is just, again, I want to focus on this idea that even under interveners in the board's construction, if we look at during a voice timer, pending voice activity, and if that only addresses when the audio content signal is delivered to the earphone, the adjusting of the voice timer, that timer must exist and appear and be in use at the time of the adjustment. So again, it creates these ambiguities which are cleaner when you apply the claim construction that was adopted by Judge Gilstrap in the Eastern District of Texas. So I will take this opportunity, then, to turn to a couple of statements. There were some arguments that Mr. Kleinschmidt may have stated that maintaining the current gain is an adjustment, but I wanted to note that rather what Mr. Kleinschmidt is stating, and actually, if we take a look at Appendix 1334, it's page 35, lines 17 through 20, Mr. Kleinschmidt offers a clear explicit statement that adjusting refers to changing the gain of the support that we cited earlier here today at Column 8. Can I ask a textual question? I'm not sure what significance the answer has. Sorry about that. When it says the signal delivered to the earpiece, does that cover both to be delivered and has been delivered? Under the board's construction, Your Honor, or under... In your view. In my view? My understanding of the term, Your Honor, is that it does not necessarily cover to be delivered. It says adjusting a mixing gain of an audio content signal delivered to the earphone with the ambient sound passed through. So I do not think that this is a matter of the gain necessarily being adjusted and then sent. What do you make of what I understood to be there to be several passages in the spec that talk about divvying up some of these tasks between the earpiece and, say, a smartphone, so that maybe the adjustment occurs on the smartphone, it's then delivered to the earpiece where a microphone at the earpiece picks up the ambient sound and they mix them and send them in? Yes, Your Honor. I think that those passages can certainly exist in harmony with our understanding of Claim 1. The specification can certainly be broader than what is claimed in Claim 1 here, and other claims in the patent I think cover the scenario that Your Honor has just referenced. I believe that I am out of time. Unless Your Honors have an additional question, I'd be happy to entertain. Okay. Thank you very much.